**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

| | |
|---|---|
| **ALLRED NEWSOME, JR.,** | **CIVIL ACTION NO. 7:14-64-KKC** |
| **Plaintiff,** | |
| V. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 11; DE 12). Plaintiff Allred Newsome, Jr., brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying his claim for Social Security Disability Insurance Benefits ("DIB").[1] The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

**I. OVERVIEW OF THE PROCESS**

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

---

[1] Newsome also concurrently filed an application for supplemental security income (Tr. at 201–04), but only his application for DIB is at issue in this appeal. (*See* Tr. at 26.)

> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Newsome filed his claim for DIB in October 2010, alleging an onset date of September 29, 2010. (Tr. at 197–98.) The agency denied is application initially and on reconsideration. (Tr. at 83–105.) Newsome requested review by an ALJ, and the ALJ held a hearing on October 30, 2012. (Tr. at 48–82.) The ALJ subsequently issued an unfavorable

decision on December 6, 2012. (Tr. at 23–47.) The Appeals Council denied Newsome's request for review (Tr. at 1–6), making the ALJ's decision the final agency decision for purposes of judicial review. *See* 20 C.F.R. § 404.981.

Newsome was 40 years old on the alleged disability onset date. (Tr. at 40.) He completed high school and worked in the relevant past as a jailer, medical supplier, machine technician, automobile salesman, and warehouse worker/delivery driver. (Tr. at 40, 55–57.) Newsome alleges that he became disabled after a work-place back and knee injury, as well as diabetes and hearing problems. (Tr. at 83, 240.)

At the first step, the ALJ determined that Newsome has not engaged in substantial gainful activity since his alleged onset date of September 29, 2010. (Tr. at 28.) At the second step, the ALJ determined that Newsome suffers from the following severe impairments: "multiple disc herniations of the lumbar spine with radiculopathy; status-post left knee arthroscopic medial and lateral meniscectomy; diabetes mellitus with polyneuropathy; morbid obesity; panic disorder with agoraphobia; generalized anxiety disorder; and major depressive disorder." (Tr. at 28.) At the third step, the ALJ concluded that Newsome does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 29.)

Next, the ALJ reviewed the record to determine Newsome's residual functioning capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1). In finding Newsome's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of

3

symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Newsome and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical specialization; and other opinion evidence. 20 C.F.R. § 404.1527; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all of the record evidence, the ALJ determined that Newsome has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [H]e can occasionally push and pull and operate foot controls with the left lower extremity; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; occasionally stoop, crouch, kneel and crawl; can frequently reach, including overhead, with the right upper extremity; must avoid concentrated exposure to excessive vibration and hazards such as moving machinery and unprotected heights; can understand, remember and carry out simple instructions; can only work in a low-stress job (defined as a job that has only occasionally decision-making required and has only occasional changes in the work setting); can have no interaction with the public; and can have frequent interaction with co-workers and supervisors.

(Tr. at 31.)

The ALJ continued to the fourth step. The ALJ asked the vocational expert ("VE") whether a hypothetical individual with Newsome's age, education, work experience, and RFC could perform any of Newsome's past relevant work. (Tr. at 76–78.) The VE testified

4

that this hypothetical individual could not perform Newsome's past work. (Tr. at 78.) The ALJ moved to the fifth step and asked if this hypothetical individual could perform other jobs available in the regional or national economy, and the VE stated that this hypothetical individual could work as a laundry worker, a product packager, and a product inspector. (Tr. at 78.) In response to a subsequent question limiting the hypothetical person to sedentary work, the VE stated that hypothetical person could work as a machine monitor, product inspector, bench worker, and hand finisher. (Tr. at 78.) Therefore, the ALJ found Newsome not disabled. (Tr. at 41.)

The ALJ's decision that Newsome was not disabled from September 29, 2010 through the date of his decision became the final ruling of the Commissioner when the Appeals Council subsequently denied Newsome's request for review on February 24, 2014. (Tr. at 1–6.) Newsome has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). "'The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision[ ]makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence

would have supported an opposite decision.'" *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## IV. ANALYSIS

On appeal, Newsome presents two primary issues for review. First, he argues that the ALJ erred in relying on state agency physicians' opinions while failing to provide adequate reasons for discounting the opinions of his treating physicians. Second, Newsome asserts that the ALJ failed to take his subjective complaints of symptoms and pain into account. (DE 11 at 7–11.)

### *1. The ALJ did not err in analyzing the treating physician's opinions or the state agency physician's opinion.*

An ALJ is required to "evaluate every medical opinion" in the record, and 20 C.F.R. § 404.1527(c) prescribes guidelines for determining the amount of weight any opinion should receive. *See* 20 C.F.R. § 404.1527(c). Factors relevant to the weight of an opinion include: (1) whether the physician examined the claimant; (2) whether the physician regularly treats the claimant and has an ongoing treatment relationship; (3) whether medical evidence supports the physician's opinion; (4) whether the physician has provided consistent opinions concerning a claimant's alleged disabilities; (5) whether the physician is a specialist in the field related to the claimant's alleged disabilities; and (6) other factors evident in the medical records. *Id.* Importantly, the ALJ must evaluate the record as a whole in connection with "other sources" including testimonial and anecdotal evidence. *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513).

The opinions of treating physicians, "medical professionals most able to provide a detailed, longitudinal picture," are *generally* afforded the greatest deference. *Blakley v.*

6

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)). The ALJ can reject the opinion of the treating physician "if good reasons are identified for not accepting it[,]" *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993), and "an exhaustive factor-by-factor analysis" of section 404.1527(c) is not required, *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 805 (6th Cir. 2011). *See also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (holding that an ALJ may reject the opinion of a treating physician if the treating physician's opinion is divorced from supporting objective evidence). Additionally, state agency medical consultants "are highly qualified . . . [and] experts in Social Security disability evaluation," 20 C.F.R. § 404.1527(e)(2)(i), and "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996).

Dr. William Fannin is Newsome's treating physician, and he provided treatment records from October 6, 2010 through October 10, 2012. (Tr. 373–81, 504–09, 608–25, 678–94.) In May 2012, Dr. Fannin opined that Newsome could occasionally lift up to 50 pounds and frequently lift up to 10 pounds; could occasionally carry up to 20 pounds; could sit a total of three hours in an eight-hour day, one hour without interruption; stand two hours total in an eight-hour day, 30 minutes without interruption; must use a cane to ambulate over 10 to 15 feet; can occasionally reach; occasionally operate foot controls; occasionally stoop, kneel, crouch or crawl; may never climb ladders or scaffolds; occasionally balance;

7

may never work at unprotected heights, moving mechanical parts, temperature extremes, or vibrations; occasionally operate a motor vehicle or be in humidity and wetness; can be in moderate noise; can frequently be in dust, odors, fumes and pulmonary irritants; and cannot walk a block at a reasonable pace on rough or uneven surfaces. (Tr. at 38, 608–15.)

Dr. Carlos Hernandez, a state agency physician, opined that Newsome could occasionally lift 50 pounds and frequently lift 25 pounds; could stand, walk, or sit about six hours in an eight-hour workday; occasionally push or pull with left lower extremity; occasionally kneel, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; frequently stoop and crouch; and should avoid exposure to concentrated vibrations. (Tr. at 100–03.)

The ALJ afforded "little weight" to Dr. Fannin's opinion. (Tr. at 38.) In discounting Dr. Fannin's opinion, the ALJ explained that his findings were too restrictive in comparison to the objective evidence. (Tr. at 38–39.) He explained that the record reveals no significant evidence of neurologic compromise, which would affect Newsome's ability to stand, walk, or sit. (Tr. at 39.) He also noted that Dr. Fannin was a family practice physician and his opinion was inconsistent with the report of Dr. Hall, who is an orthopedist. (Tr. at 39.) Finally, he explained that Dr. Fannin opined that Newsome required a cane to ambulate, but Newsome stated that he only uses a cane occasionally and he appeared at the oral hearing before the ALJ without the device. (Tr. at 39.) Because the ALJ provided "good reasons"—including a lack of supporting objective evidence—for discounting Dr. Fannin's opinion, the ALJ did not err in discounting his conclusions. *See Bogle*, 998 F.2d at 348; *Combs*, 459 F.3d at 652.

Though state agency physicians' opinions are not entitled to the special deference afforded to treating physicians, the ALJ noted that he gave "some weight" to the state agency physician's opinion that Newsome could occasionally push and pull and operate foot

8

controls with the left lower extremity, can occasionally climb ramps and stairs; can occasionally kneel and crawl; and must avoid concentrated exposure to vibrations. (Tr. at 39, 100–03.) The ALJ gave appropriate weight to the state agency physician's opinions because they are consistent with the record as a whole. *See Reeves v. Comm'r of Soc. Sec.*, No. 14-4140, 2015 WL 4231600, at *7 (6th Cir. July 13, 2015). Here, the record repeatedly shows that Newsome suffered from back and knee problems, morbid obesity, and diabetes. But despite these limitations, the record also indicates that Newsome has no significant neurologic compromise and is able to ambulate relatively normally, only using a cane occasionally. These limitations were reflected in the state agency physician's opinions and those limitations were incorporated into the ALJ's RFC determination that Newsome could perform "light work" with restrictions.[2] Physician statements that are supported by objective medical evidence and consistent with the record as a whole merit more weight. 20 C.F.R. § 404.1527(c)(3)–(4). Accordingly, the ALJ did not err in assigning some weight the state agency physician's opinions. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439–40 (6th Cir. 2012) (holding that an ALJ's decision to credit the opinion of a state-agency physician over other medical opinions is appropriate if the ALJ determines that the state-agency physician's opinion is more consistent with the overall record).

### *2. The ALJ properly considered Newsome's subjective complaints.*

The ALJ must follow a two-step process for evaluating a claimant's subjective complaints concerning pain and symptoms. *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing 20 C.F.R. § 404.1529 and SSR 96-7p). First, the ALJ must evaluate the relevant evidence in the entire case record and decide whether the claimant

---

[2] Notably, the state agency physician opined that Newsome had the lifting and carrying capabilities consistent with medium work, but the ALJ did not credit those opinions and reduced Plaintiff's RFC to light work. (Tr. at 31, 100–03.); *see* 20 C.F.R. §§ 404.1567(b), (c). However, the ALJ adopted many of the physician's postural and environmental limitations. (Tr. at 39.)

has a medically determinable physical or mental impairment—or combination of impairments—that "could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, at *2. Second, the ALJ must assess the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

A claimant's statements concerning symptoms and pain inform both steps in the ALJ's analysis; therefore, the ALJ must compare the claimant's statements with the evidence in the entire case record to determine the credibility of the statements and whether the statements can be relied upon as probative evidence. *Id.* at *4. Evidence that guides the ALJ's credibility determination includes the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) other treatment(s) received; (6) additional pain management measures; and (7) other factors concerning functional limitations due to pain. 20 C.F.R. § 404.1529(c)(3). The ALJ's notice of decision must contain a specific finding on credibility, and the ALJ must explicitly state the weight she gave the statements and the reasons for that weight. SSR 96-7p, at *4.

Here, the ALJ followed the proscribed process for evaluating Newsome's subjective symptoms and pain. At step one, the ALJ found "that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 37.)

The ALJ then discussed the record evidence that undermined Newsome's credibility. First, the ALJ explained that Newsome's wife reported that he had trouble with mood

swings, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, remembering, concentrating, completing tasks, understanding, following instructions, and using his hands. (Tr. at 37.) But the ALJ noted that Newsome's weight was stable from October 2010 to October 2012, despite his allegation that he is unable to eat or sleep and had recently lost 60 to 75 pounds from the pain. (Tr. at 37.) Second, the ALJ found the location, duration, and frequency of symptoms to be limited. (Tr. at 37–38.) He stated that Newsome alleges extreme back and knee pain, but that the record reflects that he is able to move about in a satisfactory manner. (Tr. at 37–38.) The ALJ also noted that Newsome has not sought care for his diabetes, despite the pain and debilitating limitations he alleges. (Tr. at 38.) Third, the ALJ noted that Newsome's "medical treatment has been conservative with no evidence of hospitalization for his musculoskeletal impairments and he has mainly treated with pain medication as further surgical intervention has not been advised." (Tr. at 38.) Fourth, the ALJ acknowledged that Newsome's credibility is undermined by his invalid IQ scores during a psychological evaluation. (Tr. at 38.)

The ALJ compared these factors to the objective medical evidence and found that Newsome's subjective allegations were disproportionate to the objective record evidence. (Tr. at 38.) He explained that in February 2011, Dr. Hall, an orthopedic physician, noted that Newsome was "doing relatively well" and that his knee was "stable" with "good . . . motion." (Tr. at 38, 627.) The ALJ also credited Dr. Jenkinson's evaluation that noted that Newsome's "subjective complaints were grossly out of proportion to any objective abnormality." (Tr. at 38, 545). Further, he noted that in June 2012, Dr. Hall stated that Newsome walked without a limp; his range of motion was 0 to 120 degrees; and there was tenderness in the left knee but no swelling. (Tr. at 38, 630–32.) Therefore, the ALJ

11

concluded that Newsome's statements concerning his subjective symptoms and pain were not credible. (Tr. at 38.)

The ALJ properly followed the two-step process for evaluating subjective statements concerning symptoms and pain and he set forth his rationale for discrediting Newsome's testimony. Accordingly, the ALJ applied the proper legal standards for evaluating Newsome's credibility. *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.")

## V. CONCLUSION

For the reasons set forth above, the Court **HEREBY ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 11) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 12) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated September 16, 2015.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY